# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 11, 2012

## STATE OF TENNESSEE v. MICHAEL E. FISCHER

**Appeal from the Circuit Court for Lewis County**
**No. 210CR30     Jeffrey S. Bivins, Judge**

---

**No. M2011-02196-CCA-R3-CD - Filed November 1, 2012**

---

A Lewis County Circuit Court jury convicted the defendant, Michael E. Fischer, of misdemeanor reckless endangerment, *see* T.C.A. § 39-13-103; driving under the influence ("DUI"), fifth offense, *see id.* § 55-10-401; driving while his license was revoked ("DWLR"), fifth offense, *see id.* § 55-10-504; and violation of the open container law, *see id.* § 55-10-416. At sentencing, the trial court imposed a total effective sentence of three years' incarceration by the agreement of the parties. In addition to challenging the sufficiency of the evidence to support his conviction of DUI, the defendant also argues that he was deprived of the effective assistance of counsel. Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

John S. Colley, III, Columbia, Tennessee (on appeal); and M. Wallace Coleman, Jr., Lawrenceburg, Tennessee (at trial), for the appellant, Michael E. Fischer.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Kim R. Helper, District Attorney General; and Jennifer Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On August 25, 2009, Tammy Jackson attended the "mud run" at the Lewis County Fair with her daughter and her then-boyfriend, Adrian Stanley. As she and her companions approached their vehicle to leave, Ms. Jackson saw a green Ford pick-up truck traveling down Highway 48 at a high rate of speed. She testified that the truck drove toward

her and her daughter so closely that they "had to jump on the side of the[ir] truck" to escape injury. Ms. Jackson recalled that the pick-up truck crossed the solid white line of the shoulder and traveled so closely that she could have touched it as it sped by. Ms. Jackson saw the driver and identified him at trial as the defendant.

Ms. Jackson testified that she saw the defendant drive to the fairgrounds as he passed her. She said that he then turned inside the "mud run" arena and began "doing doughnuts." She could not recall the exact time of the incident, but she estimated that it occurred sometime between 9:30 and 11:00 p.m., after the conclusion of "the derby."

Kenneth Dale Bates testified that he had worked at the fairgrounds for several years. He said that following the conclusion of the "mud run," children would traditionally compete in the "dash for cash" – an event when children would run through the mud to compete for money collected by local merchants. After the "dash for cash," the children would be sprayed with a fire hose to remove all the mud accumulated during the event. On August 25, 2009, as he was "hosing kids off with a fire hose," a green truck suddenly entered the arena and began "flinging mud and rocks at the kids and [him]." Mr. Bates shielded the children, who were unable to escape the area because of waist-high concrete barriers surrounding the arena. Mr. Bates identified the defendant as the driver of the truck. He also recalled seeing "a younger boy" in the passenger seat of the truck.

Mr. Bates testified that the defendant drove around the arena two or three times while "doing doughnuts." He said that the defendant stopped when he almost ran off the field. The defendant then exited through the arena gate and drove to an area behind nearby bleachers. Mr. Bates immediately alerted a police officer who approached the defendant within five minutes. Although uncertain of the exact time of the incident, Mr. Bates testified that the incident occurred after the completion of the "mud run."

Hohenwald Police Officer Brent Bridges testified that he worked security at the fairgrounds on August 25, 2009. He recalled Mr. Bates's alerting him to the defendant's erratic driving in the arena. Officer Bridges recalled that when he approached the defendant's truck, it "had obviously been somewhere where there was mud." When he approached, the defendant sat in the driver's side, and another male sat in the passenger seat. He immediately detected the "very noticeable" smell of alcohol on the defendant's breath. Officer Bridges observed two open 12-ounce beer cans inside the truck, which the defendant admitted were his. Officer Bridges also observed that the defendant had "real slow and labored speech" and glassy, bloodshot eyes, all "consistent with somebody who is under the influence." Officer Bridges, who had just finished his shift and did not have a patrol car, radioed the police department for officer assistance in administering field sobriety tests to the defendant. Sergeant Robert Francen arrived, administered the testing, and, ultimately,

arrested the defendant. Officer Bridges video-recorded the field sobriety tests. He recalled that the defendant was "somewhat unsteady on his feet," had difficulty getting his identification from his wallet, and emitted "an intense odor of an alcoholic beverage." Officer Bridges opined that, although the defendant was not "falling down drunk," he was too impaired to drive.

Sergeant Robert Francen responded to Officer Bridges' call for assistance at the fairgrounds on August 25, 2009. He arrived to find the defendant, still seated in the truck, with two opened beer cans on the tailgate. He recalled that the beer cans were still cold. He emptied them onto the ground at the scene. Sergeant Francen testified that the defendant smelled of alcohol, had slurred speech, and admitted that he had been drinking. The then-52-year-old defendant also admitted to Sergeant Francen that he had taken Valium earlier that day.

Sergeant Francen testified that the defendant performed poorly on each field sobriety test. On the heel-to-toe test, the defendant stopped at each step, veered from the line, and lost his balance while turning. On the one-legged stand test, the defendant swayed and stopped after only eight seconds, claiming that he could not perform the test any longer. On the finger-to-nose test, the defendant missed the tip of his nose numerous times. During the testing, the defendant discussed with Sergeant Francen his belief that he was not driving on a public roadway while on the fairgrounds property. Sergeant Francen testified that he explained to the defendant that the fairgrounds were public property because the fair took place at the county park. The defendant refused to submit to a breathalyzer test, but he admitted that his license had been revoked. Sergeant Francen arrested the defendant for DUI after determining that the defendant was too impaired to safely operate a vehicle.

With this proof the State rested their case. The transcript reflects that the trial court then denied the defendant's motion for judgment of acquittal, although the specific arguments presented were not transcribed as part of the record on appeal. The transcript also reflects that the trial court conducted a *Momon* hearing. *See Momon v. State*, 18 S.W.3d 159, 161-62 (Tenn. 1999). A transcript of the hearing, however, is not included in the record. Presumably, the defendant elected not to testify. He did, however, present the testimony of Alex Winston Gray.

Alex Winston Gray testified that he drove the defendant to the fairgrounds on August 25, 2009. He said that the defendant drank six beers over the course of the day. He claimed that the defendant never drove the truck on the highway or streets at any time. Mr. Gray said that he parked outside the arena gate, and the two men walked around "for a little while." He said that the defendant then returned to the truck and drove into the arena. Mr. Gray did not recall seeing any children near the area where the defendant drove in the arena.

Likewise, he did not recall the defendant's driving on the highway at any time during the day. Mr. Gray admitted that he drank "[q]uite a bit" that day himself, eight or nine beers, but he insisted that he could have driven safely that night. Mr. Gray was 19 years old at the time of the incident.

The jury convicted the defendant of reckless endangerment, DUI, DWLR, and violation of the open container law. At sentencing, the trial court entered judgments of conviction of DUI, fifth offense, and DWLR, fifth offense, and imposed an effective sentence of three years' incarceration, based upon the agreement of the parties.

At the motion for new trial hearing, the defendant argued that the evidence was insufficient to support his conviction of DUI and that trial counsel rendered deficient performance in three instances: by not impeaching Mr. Bates with his inconsistent statement made at a suppression hearing, by not challenging the legal sufficiency of the DUI charge based upon his not driving on a public roadway, and by not interviewing Ms. Jackson prior to trial. The defendant did not present any proof at the motion for new trial hearing.

On appeal, the defendant challenges only the sufficiency of the evidence to support his conviction of DUI and the trial court's rejecting his allegation of ineffective assistance as it relates to his claim that trial counsel failed to challenge the legal sufficiency of the DUI charge. We will review each claim in turn.

*Sufficiency of the Evidence*

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id*. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id*.

As charged in this case,

> It is unlawful for any person to drive or to be in physical control
> of any automobile . . . on any of the public roads and highways
> of the state . . . or any other premises that is generally frequented
> by the public at large, while:
>
>> (1) Under the influence of any intoxicant, marijuana,
>> narcotic drug, or drug producing stimulating effects on
>> the central nervous system[.]

T.C.A. § 55-10-401(a)(1) (2008).

In the light most favorable to the State, the evidence established the defendant's conviction of DUI. Ms. Jackson testified that the defendant drove his truck, swerving at a high rate of speed down Highway 48, and barely missed hitting her. She saw the defendant drive directly to the fairgrounds area, enter the arena, and begin "making doughnuts" in the "mud run" area. Mr. Bates saw the defendant enter the arena, drive around "making doughnuts," and sling mud and rocks on Mr. Bates and several children. Mr. Bates then saw the defendant drive to a parking area, where he was stopped by Officer Bridges and eventually arrested by Sergeant Francen. The defendant reeked of alcohol. He performed poorly on field sobriety tests. He admitted drinking throughout the day and taking Valium. Only Mr. Gray's testimony contradicts this evidence. The jury, by their verdict, chose to discredit his testimony, as was their province to do. Indeed, defendant's counsel conceded at the motion for new trial hearing that "[w]ithout the fairgrounds proof, the conviction could still survive had the jury believed Ms. Jackson." In our view, the verdict evidenced such a credibility determination as to all of the State's witnesses, and the proof overwhelmingly established the defendant's conviction of DUI.

### *Ineffective Assistance of Counsel*

Turning now to the defendant's claim of ineffective assistance of counsel, we are mindful of a few well-settled principles.

To establish entitlement to relief via a claim of ineffective assistance of counsel, the defendant must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the defendant "must show that

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Should the defendant fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the defendant the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are mixed questions of law and fact. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the trial court's factual findings, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

We need not belabor our analysis of this claim. The defendant failed to present any evidence at the motion for new trial hearing concerning his claim of ineffective assistance of counsel. The defendant was obliged to present evidence to establish his claim of trial counsel's ineffective assistance. *See Gdongalay P. Berry v. State*, No. M2010-01136-CCA-R3-PD, slip op. at 6 (Tenn. Crim. App., Nashville, Nov. 4, 2011) (ruling that "[t]he petitioner's failure to present any proof at the evidentiary hearing . . . necessarily means that the petitioner failed to prove any of these grounds by clear and convincing evidence"). Consequently, we conclude that the trial court properly denied relief as to this issue.

We also observe that ineffective assistance of counsel claims should normally be raised by a petition for post-conviction relief inasmuch as a claim of ineffective assistance of counsel is a single ground for relief, and all factual allegations must be presented in one claim. *See* T.C.A. § 40-30-206(d). Successor counsel's decision to raise ineffective assistance of counsel on direct appeal may preclude further review of trial counsel's performance in a future post-conviction proceeding. This court has held that the claim of ineffective assistance of trial counsel in a subsequent post-conviction action was previously determined in the motion for new trial proceeding and on direct appeal "even though the petitioner may not have made the same [specific] allegations [of ineffective assistance] on

direct appeal that he [later] makes in his post-conviction petition." *See Nelson Troglin v. State*, No. E2010-01838-CCA-R3-PC, slip op. at 20-21 (Tenn. Crim. App., Knoxville, Oct. 11, 2011) (citing *Ronald Yates v. State*, No. W2008-02067-CCA-R3-PC (Tenn. Crim. App., Jackson, Dec. 3, 2009); *Jay Homer Chambers v. State*, No. E2004-01862-CCA-R3-PC (Tenn. Crim. App., Knoxville, Sept. 26, 2005); *John Earl Scales v. State*, No. M2003-01753-CCA-R3-PC (Tenn. Crim. App., Nashville, July 13, 2004), *perm. app. denied* (Tenn. Nov. 8, 2004); *Russell Lane Overby v. State*, No. W2001-01247-CCA-R3-PC (Tenn. Crim. App., Jackson, Apr. 26, 2002), *perm. app. denied* (Tenn. Sept. 9, 2002)). For this reason, this court has repeatedly warned that claiming ineffective assistance of counsel on direct appeal is "a practice fraught with peril." *State v. Thompson*, 958 S.W.2d 156, 161 (Tenn. Crim. App. 1997). That being said, we acknowledge that, in this case, the defendant retains a surviving claim of ineffective assistance relative to the performance of successor counsel in relation to his representation on the motion for new trial and on direct appeal. *See*, *e.g.*, *Laraiel Winton v. State*, No. E2011-00762-CCA-R3-PC (Tenn. Crim. App., Knoxville, Jan. 31, 2012), *perm. app. denied* (Tenn. Aug. 16, 2012).

*Conclusion*

The evidence is sufficient to establish the defendant's conviction of DUI. The trial court correctly denied the defendant's motion for new trial based upon an allegation of ineffective assistance of trial counsel. The judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE